UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MICHAEL COLBERT,

        Plaintiff,

    -v-                                          No.  15CV1537-LTS-DCF

WARDEN TURHAN GUMUSDERE et al.

        Defendants.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        In this action brought pursuant to 42 U.S.C. § 1983, pro se Plaintiff Michael Colbert ("Plaintiff" or "Colbert") seeks monetary damages for Eighth and Fourteenth Amendment violations he allegedly suffered while incarcerated as a pretrial detainee at the Anna M. Kross Center ("A.M.K.C.") at Rikers Island.  Plaintiff claims that A.M.K.C. Warden Turhan Gumusdere, A.M.K.C. Maintenance Supervisor Anthony Bilardi, New York City Department of Corrections ("DOC") Commissioner Joseph Ponte, the City of New York (the "City") and "EHO Captain" Williams, as well as several John Doe officers (collectively "Defendants"), exhibited deliberate indifference to his health and safety, causing him to suffer serious injuries as a result.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

        Now before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint (Docket Entry No. 9 ("Am. Compl.")) pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  (See Docket Entry No. 16.)  Defendants assert that: Plaintiff failed to exhaust the

---

[1] According to Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint (Docket Entry No. 17 ("Def. Memo.")), the

administrative remedies available to him at A.M.K.C. prior to bringing suit; Plaintiff has not alleged sufficient facts to state a constitutional claim; and Plaintiff has failed to allege facts sufficient to state a claim for municipal liability as against the City.  The Court has carefully considered all of the parties' submissions.  For the reasons set forth below, the Court grants Defendants' motion and dismisses Plaintiff's Amended Complaint in its entirety.

## BACKGROUND[2]

At approximately 8 a.m. on November 27, 2014, Plaintiff slipped and fell in a puddle that had formed on the floor of his housing unit at the A.M.K.C. during a rainstorm the previous night.  (Am. Compl. ¶ II-d.)  Plaintiff alleges that he was walking from his bed to the bathroom when he slipped, and that he did not see the puddle because the dormitory lights were not yet on for the day.  (Id.)  Plaintiff claims to have suffered injuries to his head, neck, back and knee.  (Am. Compl. ¶ III.)  He was transported to Elmhurst Hospital, where doctors took x-rays of his neck and back, gave him a knee brace and prescribed pain medication.  (Id.)

Plaintiff claims that his housing unit had a leaky roof that allowed puddles to form on the floor whenever it rained.  (Id. ¶ II-d.)  The roof deteriorated during Plaintiff's time

---

defendant named in Plaintiff's filings as EHO Captain Williams has not been served with the Amended Complaint and has not waived service.  (Def. Memo. p. 2 n.1.)  Because, as explained below, the Amended Complaint fails to state a claim upon which relief may be granted, the Court grants Defendants' request to extend the relief granted herein to the served Defendants to Captain Williams as well.

[2]   The facts that follow are drawn from the Amended Complaint and are assumed to be true for the purposes of this motion practice.  Certain additional facts concerning Plaintiff's efforts to exhaust his administrative remedies are drawn from Plaintiff's original Complaint (Docket Entry No. 2 ("Compl.")) and Plaintiff's Notice of Opposition to Motion to Dismiss.  (Docket Entry No. 22 ("Pl. Opp.").)

in the unit, and he alleges that a puddle formed "in a new spot whenever it rain[ed] badly." (Am. Compl. ¶ II-d.) Plaintiff alleges that other prisoners had slipped, fallen, and injured themselves as a result of these puddles prior to his own fall, and that Defendants knew about the problems with the roof. (Id.) Officers assigned to the housing unit had submitted work orders to fix the roof, and prisoners residing in the unit had filed grievances about it. (Id.) Furthermore, the grievance clerk had emailed the A.M.K.C. maintenance staff to ask that the roof be fixed. (Id.) At least one inmate in the same housing unit as Plaintiff had filed a civil complaint alleging facts similar to those asserted by Plaintiff against Defendants prior to Plaintiff's fall. (Id.); see Tyler v. Gumusdere, et al., No. 14CV8638-JMF.

   According to Plaintiff's Opposition, he filed a grievance in the A.M.K.C. grievance box sometime between his fall on November 27 and the end of November 2014. (Pl. Opp. at ECF p. 12.) In December 2014, Colbert met with Elizabeth Landen, a member of A.M.K.C.'s grievance staff, who told him she would send "a message by email [about the problems with the roof] to the maintenance supervisor and captain." (Id.)

   Plaintiff signed his original Complaint on December 2, 2014, while his grievance was "still pending." (Compl. ¶ IV-E(3).) This action was commenced by the filing of that Complaint on February 27, 2015. Plaintiff filed his Amended Complaint on April 14, 2015. (Docket Entry No. 9.) At the time that Plaintiff filed the Amended Complaint, which was four months after he suffered his injuries, the roof had still not been repaired. (Am. Compl. ¶ II-D.) Plaintiff claimed, however, that he was "satisfied with the decision" on the grievance – presumably referencing Landen's follow-up with the maintenance supervisor and captain – and saw "no need for appeal." (Am. Compl. ¶ IV-E(3).)

DISCUSSION

Legal Standards on a Rule 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss [pursuant to Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). This requirement is satisfied when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). A complaint that contains only "naked assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice. Twombly, 550 U.S. at 555. In making its Rule 12(b)(6) determinations, the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which [he] relied in bringing the suit." ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

The Court construes pro se pleadings liberally, Harris, 572 F.3d at 72, and interprets them to raise the "strongest [claims] that they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). Nevertheless, the Court need not accept as true "conclusions of law or unwarranted deductions of fact that are not admitted." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (internal quotation marks and citations omitted).

Exhaustion of Administrative Remedies

As an initial matter, Defendants argue that the Amended Complaint should be dismissed because Plaintiff brought this action without first exhausting DOC's four-step administrative process for prisoner grievances.  (Def. Memo. p. 5); see also DOC "Directive: Inmate Grievance and Request Program" ("IGRP") (No. 3376, effective Sept. 10, 2012), available at http://www.nyc.gov/html/doc/downloads/pdf/Directive_3376_Inmate_Grievance_ Request_Program.pdf  (last visited March 24, 2016); Groenow v. Williams, No. 13CV3916-PAC-JLC, 2014 WL 941276, at *2 n.1 (S.D.N.Y. Mar. 11, 2014).

The Prison Litigation Reform Act of 1995 (the "PLRA"), which regulates the filing of federal lawsuits by incarcerated individuals, provides in relevant part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.S. § 1997e(a) (LexisNexis 2009).  The requirement of exhaustion "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit," id. at 524, so long as the administrative process "could provide some sort of relief on the complaint stated."  Booth v. Churner, 532 U.S. 731, 734 (2001).

While exhaustion is a mandatory statutory precondition to filing suit, the PLRA explicitly permits courts to dismiss cases without finding that administrative remedies have been exhausted "[i]n the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune

from such relief." 42 U.S.C.S. § 1997e(c)(2) (LexisNexis 2009).  In light of this provision, as well as the Court's determination, explained infra, that the Amended Complaint is facially deficient, the Court need not conclusively determine whether Plaintiff fully exhausted the administrative remedies available to him, nor whether special circumstances existed that would have excused him from doing so.³  See Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).

Plaintiff's Failure to State a Claim

A pretrial detainee's challenge to the conditions of his confinement is analyzed under the Due Process Clause of the Fourteenth Amendment.  Caiozzo v. Koreman, 581 F.3d 63, 66 (2d Cir. 2009); see also Hallett v. Davis, No. 11CV4646-WHP, 2012 WL 4378020, at *2 (S.D.N.Y. Sep. 25, 2012).  The Eighth Amendment does not apply to Colbert's claims because "as a pre-trial detainee [Plaintiff] was not being punished." Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000) (internal quotation marks and citations omitted).  In Caiozzo, however, the court held that the same standard applies in analyzing a Fourteenth Amendment claim: "[c]laims

---

³ On the record before the Court, it appears possible that Colbert did exhaust his administrative remedies prior to filing suit.  Although his original complaint was signed on December 2, 2014 (see Compl.) – only five days after Plaintiff suffered his alleged injuries – it was not actually filed until February 27, 2015, after Colbert had met with grievance officer Elizabeth Landen.  Colbert may well have exhausted the administrative remedies available to him at A.M.K.C. upon meeting with Landen.  Landen's decision to notify maintenance personnel about the problem with the roof was a favorable outcome for Colbert, so the second step of DOC's Grievance and Request Program may not have applied to him.  See IGRP ("if unsatisfied with the disposition or a disposition has not been reached in a timely manner, request a hearing with the Inmate Grievance Resolution Committee within five days of the disposition.").  Even a quick response by maintenance would not have been likely to lead to the leaky roof being fixed within the five days in which Plaintiff could have appealed.

for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." Caiozzo, 581 F.3d at 71.

To state a claim for constitutionally inadequate conditions of confinement, a pretrial detainee must plead facts satisfying both objective and subjective criteria. The Supreme Court has held that a prisoner must demonstrate both that "the deprivation alleged [was] objectively, sufficiently serious," and that prison officials exhibited "a sufficiently culpable state of mind[:] deliberate indifference to inmate health or safety."[4] Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted); see also Caiozzo, 581 F.3d at 71. Under the objective prong of the analysis, "only extreme deprivations are sufficient to sustain a conditions-of-confinement claim." Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir. 1999) (internal quotation marks and citations omitted). Prison conditions are required to be "humane, though not necessarily comfortable," and while "the conditions themselves must be evaluated in light of contemporary standards of decency," Jabbar v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012) (internal quotation marks and citations omitted), "objectively, the deprivation the inmate suffered [must have been] 'sufficiently serious that he was denied the minimal civilized measure of life's necessities.'" Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (citing Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001)).

---

[4] The Court acknowledges that the Supreme Court's decision in Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015), which held that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one," id. at 2473, may have implications for cases such as this one, in which a pretrial detainee has asserted a deliberate indifference claim. The Kingsley holding has not yet, however, been applied beyond the context of excessive force cases. Moreover, even if Kingsley's purely objective analysis were applied here, the Court's analysis would remain unchanged because Plaintiff has failed to allege facts that satisfy the objective prong of the deliberate indifference inquiry.

Here, despite Plaintiff's characterization of his living conditions at A.M.K.C. as "squalid, dangerous and potentially fatal," the facts set forth in the Amended Complaint depict an unpleasant, but not unconstitutional, set of living conditions arising from poor maintenance. (Am. Compl. ¶ II-d.) According to the diagram attached to the Amended Complaint, the leaks that created the puddles were not pervasive. (Id. Ex. A.) Courts in this district have consistently held that "slippery prison floors, at best, pose a claim of negligence, which is not actionable under the United States Constitution." Jennings v. Horn, No. 05CV9435-SAS, 2007 WL 2265574, at *5 (S.D.N.Y. Aug. 7, 2007); see also Covington v. Westchester County Dep't of Corrections, No. 06CV5369-WHP, 2010 WL 572125, at *8 (S.D.N.Y. Jan. 25, 2010) (holding that a wet hallway floor on which the plaintiff slipped and fell "does not rise to the level of intolerable prison conditions," even if prison officials knew about the wet conditions and ordered the prisoner into the hallway); Edwards v. The City of New York, No. 08CV05787-PGG, 2009 WL 2596595, at *3 (S.D.N.Y. Aug. 24, 2009) (holding that "allegations of wet conditions leading to a slip-and-fall will not support a Section 1983 claim even where . . . the plaintiff also alleges that the individual defendants had notice of the wet condition but failed to address it."). Cf. Walker v. Vargas, No. 11CV9034-ER, 2013 WL 4792765 (S.D.N.Y. Aug. 26, 2013) (complaint met objective prong where plaintiff alleged that he had been forced to work in prison kitchen that had been flooded for a week due to a clogged drain and contained hazardous conditions, including an open hot water drain into which plaintiff slipped, sustaining serious burns).

Plaintiff has not alleged facts that, read in the light most favorable to him, indicate that he was "denied the minimal civilized measure of life's necessities." See Walker, 717 F.3d at 125. Accordingly, his Amended Complaint fails to meet the first prong of the

deliberate indifference test – demonstration that there was an objectively serious condition that posed an excessive risk to inmate health or safety.  See Farmer, 511 U.S. at 837.  Under these circumstances, the Amended Complaint cannot survive this motion practice and the Court need not address the subjective prong of the test.

In light of Plaintiff's failure to plead facts alleging that the conditions of his confinement were objectively serious enough to state a claim of deliberate indifference rising to the level of a Fourteenth Amendment violation, the Court grants Defendants' motion to dismiss Plaintiff's Amended Complaint.[5]

---

[5] In light of the Court's determination that Plaintiff has failed to plead a constitutional violation, which is a necessary prerequisite of a claim for municipal liability under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978), the Court also grants Defendants' motion insofar as it seeks dismissal of Plaintiff's municipal liability claim.

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's Amended Complaint is granted in its entirety. The Clerk of Court is respectfully requested to enter judgment in Defendants' favor and close this case.

This Memorandum Opinion and Order resolves Docket Entry Number 16.

The Court certifies, pursuant to 28 U.S.C. 1915(a)(3), that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: New York, New York
       March 25, 2016

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

**Copy mailed to:**
Mr. Michael Colbert, DIN 15R2219
Watertown Correctional Facility
23147 Swan Road
Watertown, New York 13601-9340